# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WESLEY WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>C. BELL, et al.,<br><br>    Defendants. | Case No. 1:16-cv-01584-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT<br><br>[ECF No. 19] |

Plaintiff John Wesley Williams is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff John Wesley Williams is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion to declare Plaintiff a vexatious litigant, filed on September 18, 2017.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendants C. Bell, S. Harris, R. Fischer, and Douglas for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

On September 18, 2017, Defendants filed a motion to declare Plaintiff a vexatious litigant and require the posting of security to proceed with this action. Plaintiff filed an opposition on October 26,

1

2017, and Defendants did not file a reply.[1] Therefore, the motion is deemed submitted without oral argument. Local Rule 120(l). Accordingly, the motion is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## DISCUSSION

### A. Declaration of Vexatiousness and Posting of Security Fee

Defendants seek to have Plaintiff declared a vexatious litigant under California law and ordered to post security under Local Rule 151(b) of the Eastern District of California, which provides:

> On its own motion or on motion of a party, the Court may at any time order a party to give a security, bond, or undertaking in such amount as the Court may determine to be appropriate. The provisions of Title 3A, part 2, of the California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a procedural Rule of this Court on the basis of which the Court may order the giving of a security, bond, or undertaking, although the power of the Court shall not be limited thereby.

Local Rule 151(b).

Thus, in ordering a party to give security under Local Rule 151(b), the Court must determine that (1) the party is a vexatious litigant and (2) there is not a reasonable probability that the party will prevail pursuant to California Civil Procedure Code § 391.1, which provides:

> In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security or for an order dismissing the litigation pursuant to subdivision (b) of Section 391.3. The motion for an order requiring the plaintiff to furnish security shall be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he or she will prevail in the litigation against the moving defendant.

Cal. Civ. Proc. § 391.1.

### B. Legal Standard

Under California law, a vexatious litigant, in relevant part, is one who in the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least

---

[1] On November 27, 2017, Plaintiff filed a request to strike any reply filed by Defendants for lack of service. (ECF No. 29.) As just stated, Defendants did not file a reply to Plaintiff's opposition, therefore, Plaintiff's motion to strike shall be denied.

2

five litigations other than in small claims court that have been finally determined adversely to the person. Cal. Civ. Proc. Code § 391(b)(1) (quotation marks omitted). See Bradford v. Brooks, No. 16-16151, 2016 WL 4537900, at *1 (9th Cir. Aug. 31, 2016) (holding that the district court did not abuse its discretion in requiring an inmate-plaintiff to post security under Local Rule 151(b), and affirming dismissal following non-payment). The Court notes that the inquiry of whether Plaintiff should be required to furnish security to proceed with an action, is an inquiry distinct from any declaration of vexatiousness and issuance of a pre-filing order under federal law.[2] Under California Civil Procedure Code section 391(b) there is no requirement of evidence of misconduct on the part of Plaintiff and any final determination which was adverse to Plaintiff qualifies.

### C. Final Adverse Determination

In support of their argument that Plaintiff is a vexatious litigant, Defendants first identify fifteen cases filed in the past seven years which were decided against Plaintiff. See Cal. Civ. Proc. § 391(b)(1).[3] Defendants' request that the Court take judicial notice of the following fifteen cases is granted. See Fed. R. Evid. 201; see also United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (finding that the court may take judicial notice of court records in other cases); ECF No. 19-3.

In Williams v. CDCR, et al., case number 2:15-cv-01057-JAM-EFB P (E.D. Cal.), the District Court dismissed the action on December 27, 2016, for failure to serve Defendants with process. (Req. for Judicial Notice ["RJN"], Ex. 1, ECF No. 19-3.)

---

[2] The Court has inherent power under the All Writs Act, 28 U.S.C. § 1651(a), to enter a pre-filing order against a vexatious litigant, but a pre-filing order is "an extreme remedy that should rarely be used." Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057 (9th Cir. 2007), *cert. denied*, 555 U.S. 1031 (2008) (citation omitted). A pre-filing order "can tread on a litigant's due process right of access to the courts" and it should not be entered "with undue haste" or without "a cautious review of the pertinent circumstances." Molski, 500 F.3d at 1057 (citation omitted). The focus under federal law is on the number of suits that were frivolous or harassing in nature rather than on the number of suits that were simply adversely decided. Molski, 500 F.3d at 1061; De Long v. Hennessey, 912 F.2d 1144, 1147-48 (9th Cir. 1990). Prior to entering a pre-filing order against a litigant, (1) the litigant must be given notice and an opportunity to be heard, (2) the Court must compile an adequate record, (3) the Court must make substantive findings about the frivolous or harassing nature of Plaintiff's litigation, and (4) the pre-filing order must be narrowly tailored to closely fit the specific vice encountered. Molski, 500 F.3d at 1057 (citing De Long, 912 F.2d at 1147-48) (quotation marks omitted).

[3] Pursuant to section 391(b)(1) of the California Code of Civil Procedure, a vexatious litigant is a person who "in the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing."

In <u>Williams v. Bell, et al.</u>, case number 2:15-cv-03314-PSG-FFM (C.D. Cal.), the District Court denied Plaintiff's request for in forma pauperis status and terminated the case on August 20, 2015. (<u>Id.</u>, Ex. 2.)

In <u>Williams v. Soto</u>, case number 2:15-cv-01294-PSG-FFM (related case 2:05-cv-03085-PSF-FFM (C.D. Cal.), the Court denied Plaintiff's request to proceed in forma pauperis and dismissed the action on February 27, 2015. (<u>Id.</u>, Ex. 3.)

In <u>Williams v. Soto</u>, case number 2:15-cv-1264-PSG-FFM (C.D. Cal.), the Court construed the action filed as a petition for writ of habeas corpus as a civil rights complaint because the allegations related to medical care. (<u>Id.</u>, Ex. 4.) Plaintiff's request to proceed without the prepayment of filing fees was denied and the case was dismissed on May 7, 2015. (<u>Id.</u>)

In <u>Williams v. Soto, et al.</u>, case number 14-15524 (Ninth Circuit appeal from N.D. Cal. Case No. 4:12-cv-03583 YGR (PR)). Plaintiff's request to proceed in forma pauperis was denied because the appeal was found to be frivolous. (<u>Id.</u>, Ex. 5.) The appeal was subsequently dismissed on June 6, 2014, for failure to pay the filing fee. (<u>Id.</u>)

In <u>Williams v. Moore, et al.</u>, case number 2:13-cv-09522-PSG-FFM (C.D. Cal.), the Court dismissed the case on June 16, 2015, for failure to pay the filing fee. (<u>Id.</u>, Ex. 6.)

In <u>Williams v. CDCR, et al.</u>, case number 2:13-cv-08043-PSG-FFM (C. D. Cal.), Plaintiff voluntarily dismissed the case on January 13, 2014, and the case was closed on February 7, 2014. (<u>Id.</u>, Ex. 7.)

In <u>Williams v. Harrington, et al.</u>, case number 12-16320 (Ninth Circuit appeal from E.D. Cal. Case No. 1:09-01823-GSA), the case was dismissed on March 18, 2013, after the Ninth Circuit reviewed and affirmed the district court's dismissal of the action. (<u>Id.</u>, Ex. 8.)

In <u>Williams v. Soto, et al.</u>, case number 4:12-cv-03583 YGR (PR) (N.D. Cal.), the Court dismissed the case on March 7, 2014, for failure to prosecute. (<u>Id.</u>, Ex. 9.)

In <u>Williams v. Harrington, et al.</u>, case number 1:11-cv-01262-GSA-PC (E.D. Cal.), the Court dismissed the case on May 23, 2014, for Plaintiff's failure to comply with court orders. (<u>Id.</u>, Ex. 10.)

In <u>Williams v. Neotti, et al.</u>, case number 3:10-cv-02672 H (BGS) (S. D. Cal.), the Court denied Plaintiff's request for in forma pauperis status on January 11, 2011. (<u>Id.</u>, Ex. 11.) Plaintiff was

ordered to pay the filing fee within 30 days or the action would be dismissed. (Id.) Plaintiff did not pay the filing fee. (Id.) Plaintiff filed a motion for reconsideration, which was denied on February 24, 2011. (Id.)

In Williams v. Hubbard, case number 10-56230 (Ninth Circuit appeal from C.D. Cal. Case No. 2:10-cv-01717-UA-FFM), Plaintiff's request to proceed in forma pauperis was denied because the appeal was found to be frivolous. (Id., Ex. 12.) The appeal was subsequently dismissed on December 8, 2010, for failure to prosecute. (Id.)

In Williams v. Harrington, et al., case number 1:09-cv-01823-GSA (E.D. Cal.), the case was dismissed on May 25, 2012, for failure to state a claim. (Id., Ex. 13.)

In Williams v. Walker, et al., case number 2:07-cv-02385 (E.D. Cal.), Plaintiff moved for voluntary dismissal on March 4, 2011, and the case was dismissed on March 18, 2011. (Id., Ex. 14.)

In Williams v. CDCR, case number 2:16-cv-03622-PSG-FFM (C.D. Cal.) (related case 2:05-cv-03085-PSG-FFM), the case was filed as a petition for writ of habeas corpus and was summarily dismissed. (Id., Ex. 15.) In the dismissal order, the Court declined to convert the petition into a civil rights lawsuit, reasoning that Plaintiff has already been declared a "Three Striker." (Id.)

Defendants further point out that in Williams v. Foston, et al., Kern County case number S1500CV270207DRL, Plaintiff was determined to be a vexatious litigant on August 26, 2010, and ordered to post a security bond in order for the case to proceed. (Id., Ex. 17.) The case was dismissed on January 5, 2011, for Plaintiff's failure to post security. (Id.) Also, in Williams v. Harrington, et al., Kern County case number S1500CV270209DRL, the Court granted Defendants' motion to declare Plaintiff a vexatious litigant on August 19, 2010, and ordered Plaintiff to post security for the case to proceed. (Id., Ex. 18.) The case was dismissed on September 9, 2010, for Plaintiff's failure to post security. (Id.)

Plaintiff has had five or more cases in the preceding seven year period which were "finally determined adversely" to him. See Williams v. CDCR, et al., case number 2:15-cv-01057-JAM-EFB P (E.D. Cal.); Williams v. Soto, et al., case number 14-15524 (Ninth Circuit appeal from N.D. Cal. Case No. 4:12-cv-03583 YGR (PR)); Williams v. CDCR, et al., case number 2:13-cv-08043-PSG-FFM (C. D. Cal.); Williams v. Soto, et al., case number 4:12-cv-03583 YGR (PR) (N.D. Cal);

Williams v. Hubbard, case number 10-56230 (Ninth Circuit appeal from C.D. Cal. Case No. 2:10-cv-01717-UA-FFM); Williams v. Walker, et al., case number 2:07-cv-02385-WBS-GGH (E.D. Cal.); Williams v. CDCR, case number 2:16-cv-03622-PSG-FFM (C.D. Cal.) (related case 2:05-cv-03085-PSG-FFM). However, in order to find Plaintiff a vexatious litigant, the Court must also determine that whether he has a reasonable probability of prevailing in this action. Cal. Civ. Proc. Code §§ 391.1, 391.3

**D.     Reasonable Probability of Prevailing**

This action is proceeding against Defendants C. Bell, R. Fischer, Douglas, and S. Harris for a violation of the Eighth Amendment by failing to place him in a level of mental health care that is adequate to treat his cutting disorder.

1.     Complaint Allegations

Plaintiff is a participant in the California Department of Corrections and Rehabilitation mental health services delivery system (MHSDS). (Compl. at 3, ECF No. 1.) Department State Hospital (DSH) is required for prisoners who need MHSDS care and treatment in a hospital setting, while Enhanced Outpatient (EOP) is a special program for prisoners who are gravely mentally disabled and unable to care for themselves in the general population. (Id.) Since early 2007, Plaintiff has received MHSDS care, treatment and services at the EOP level of care for what is commonly referred to as a "cutter." (Id. at 4.) A "cutter" is considered a serious psychiatric problem because although Plaintiff does not typically cut in a suicide attempt, but rather to relieve stress, anxiety, depression or anger. This type of cutting is more dangerous than a suicide attempt because the chances of accidental cuts may cause unintentional death. (Id.)

From approximately July 5, 2015 to August 6, 2015, Plaintiff was held in mental health crisis bed for suicide prevention due to his cutting behavior brought about by retaliatory harassment of prison officials at California State Prison-Lancaster because Plaintiff was assisting EOP attorneys to abolish discriminatory practices against EOP inmates at Lancaster. (Id. at 4-5.)

From August 6, 2015 to March 8, 2016, Plaintiff was held at DSH Stockton for treatment of his cutting disorder. (Id. at 5.) On March 8, 2016, Plaintiff was discharged from DSH to California State Prison-Sacramento EOP. On or about July 27, 2016, Plaintiff was interviewed by RBGG attorneys

regarding discriminatory treatment and conditions at California State Prison-Sacramento. On or about August 16, 2016, as a direct result of the interview, Plaintiff was barred from EOP treatment by prison officials at Sacramento acting on behalf of CDCR, despite the fact that between June and August 2016, Plaintiff had cut himself 3-5 times. (Id. at 5.)

On September 7, 2016, Plaintiff arrived at California State Prison-Corcoran and was immediately placed in MHCB for suicide observation. (Id. at 5-6.)

On September 11, 2016, psychiatric technician J. Wadler conducted a mental health evaluation of Plaintiff which included a consult with custody officers supervising Plaintiff and determined it would be best to raise Plaintiff's MHSDS level of care to EOP. (Id. at 6.) Plaintiff attaches an Interdisciplinary Progress Note, dated September 11, 2016, regarding a "5 Day Follow Up" on which Wadler noted "MH evaluation for EOP status. C/Os were talked w im [sic] and agree this might be best for IP." (Id. at 13.)

On September 13, 2016, Plaintiff was evaluated by primary clinician social worker J. Gutknecht who initially endorsed Plaintiff for EOP. (Id. at 6.) However, on September 14, 2016, Plaintiff met with Gutknecht again who informed Plaintiff that Defendant Dr. Douglas stated "sending him to EOP will do no good because they'll only make him a ping pong by continuing to kick him out because nobody wants him." (Id.) Defendant Dr. Douglas then ordered Gutknecht not to refer Plaintiff to the appropriate level of MHSDS care to receive adequate care and treatment for his "cutting" disorder. (Id.) It is the general practice among CCCMS general population that MHSDS inmates demonstrates a sign of weakness and "cutters" like Plaintiff are "weirdos" who deserve to be "rolled up" to be placed in protective custody or impose physical harm. (Id. at 7.) This practice has discouraged Plaintiff from "coming forward to report or seek medical aid for incidents of cutting" since arriving at Corcoran. (Id.)

On September 14, 2016, Plaintiff filed an emergency grievance based on the present imminent danger of his "cutting" disorder. (Id.) On September 21, 2016, Defendant Psychologist Dr. Fischer interviewed Plaintiff, and Plaintiff revealed current and pre-existing cuts on his wrists inflicted between August and September 2016. (Id. at 7-8.) Plaintiff and Dr. Fischer also discussed the current

7

general population prisoner practice and Plaintiff's discouragement to report injuries to medical staff. (Id. at 8.)

Because prison officials acting on behalf of CDCR do not want Plaintiff giving reports about EOP conditions to EOP attorneys, Defendants "acted in concert to deny Plaintiff adequate competent and effective mental health care and treatment to treat his cutting disorder." (Id.)

Plaintiff filed inmate grievance log number COR HC 16061128 regarding the allegations in the complaint. (Id. at 17-22.) The appeal was bypassed at the first level of review, and Plaintiff was interviewed by Defendant Dr. Fischer on September 21, 2016. (Id. at 21.) The appeal was partially granted at the second level of review in that the appeal was processed as an emergency, but denied as to Plaintiff's request to receive "EOP level of care due to imminent danger (cutting self)" by Defendants Harris (Chief Psychologist) and Bell (Chief Executive Officer) in September 2016. (Id. at 21-22.) The appeal was denied as follows:

> You were at DSH for about nine months and you were also at EOP level of care before being downgraded to CCCMS level of care at another institution. You are requesting more mental health services including groups, if available. You have been meeting with DR. Gutknecht on 3A facility and he agreed to meet with you weekly, instead of every 90 days, to provide additional counseling services. He will also be starting a small group on 3A, for which you will be eligible. You have been given counsel [sic] on dealing with your cutting behavior. Your level of care will be evaluated on an ongoing basis.

(Id. at 21.)

The appeal was denied at the Director's level of review as follows:

> On August 16, 2016, you met with the Interdisciplinary Treatment Team (IDTT) and they determined as a group that your level of care within the Mental Health Delivery System should be lowered to Correctional Clinical Case Management System (CCCMS) level of care. The IDTT has the authority to revise, raise or lower any patient's level of care based on their assessment of the patient's mental health symptoms and conditions. Treatment plans are based on current assessments from all disciplines and with as much participation from the patient as possible. While it is best if the treatment team and the patient agree, unanimity is not required.

(Id. at 17.)

///
///
///

### 2. Argument and Analysis

Defendants argue that Plaintiff is not likely to succeed on the merits of his deliberate indifference claim because (1) the record contradicts his claim that he requires a higher level of care to treat his "cutting" disorder; and (2) he cannot show that Defendants were deliberately indifferent.

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm, 680 F.3d at 1122; Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To state a claim a plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). "Deliberate indifference is a high legal standard," Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted). Further, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1977); Snow v. McDaniel, 681 F.3d at 987-88; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Defendants argue that Plaintiff's medical records not only show that he is able to control his cutting behavior, but that he has been using his cutting behavior to manipulate mental health professional staff in order to attain a higher level of care. Defendants reason that Plaintiff has failed to demonstrate a serious medical need.

Based on the record, it is not clear that Plaintiff has no reasonable probability of succeeding on the merits of his case. Defendants cite the declaration by Dr. Joseph Walsh (Chief of Mental Health at California State Prison-Corcoran, previously submitted in response to Plaintiff's request for a preliminary injunction. (ECF No. 14-1.) Dr. Walsh declares that, after reviewing Plaintiff's mental health record, Plaintiff is currently receiving appropriate mental health care treatment at the CCCMS level. (Decl. of Dr. Joseph Walsh, ¶ 13; ECF No. 14-1.)

Defendants do not dispute that Plaintiff suffers from a mental health condition which subjects him to regular evaluation by mental health staff. While Defendants submit evidence that some medical staff have made determinations that Plaintiff, at times, is able to control and is potentially manipulating the system for secondary gain, the Court cannot find at this juncture, that there is no reasonable likelihood he can proceed on the merits of his claim against any Defendant in this action. Plaintiff contends that Defendants have failed to provide him recommended treatment for his mental health issues and failed to maintain him at an appropriate level of treatment within the MHSDS, for non-medical reasons. More specifically, Plaintiff contends that Defendant Dr. Douglas ordered Primary Clinician Gutknecht not to refer Plaintiff to the appropriate level of mental health care despite Gutknecht's recommendation. Defendant Psychologist Fischer interviewed Plaintiff regarding his inmate appeal as to the inappropriate level of mental health treatment which was later denied by both Defendants Bell and Harris. In support of his claims, Plaintiff submits an Interdisciplinary Progress Note, dated September 11, 2016, by J. Walder who indicates that EOP status may be best for Plaintiff. (Compl. at 13.) Further, another Interdisciplinary Progress Note, dated September 13, 2016, by Dr. Gutknecht indicates that Plaintiff will likely be endorsed for EOP. (Id. at 15.) Furthermore, in his opposition, Plaintiff contends that he has been falsely labeled as a manipulator for secondary gain, and Plaintiff submits several mental health referral chronos. (Opp'n, Ex. 7; ECF No. 25.) Accordingly, based on the competing allegations and without evidence specific to each Defendant, at this stage of

the proceedings, the Court cannot determine that Plaintiff has no reasonable opportunity to prevail on the merits in this action.[4] See, e.g., Hollis v. Dezember, No CIV S-08-02810 KJN P, 2010 WL 4220535, at *2 (E.D. Cal. Oct. 20, 2010) (denying defendants' motion to declare plaintiff a vexatious litigant because the court could not determine at that juncture that there was no reasonable probability that plaintiff would not prevail against any defendant). In sum, while the Court must evaluate and weigh the evidence in determining whether Plaintiff has a reasonable probability of prevailing, the type and weight of evidence in this case "does not so clearly favor" Defendants that the Court can find that Plaintiff has no reasonable probability of prevailing. Therefore, Defendants' motion to declare Plaintiff a vexatious litigant and post security should be denied.

### III.

### RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion to declare Plaintiff a vexatious litigant and post security prior to proceeding with this action be denied.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 29, 2017**

UNITED STATES MAGISTRATE JUDGE

---

[4] This finding should not be construed as a ruling on the actual merits of Plaintiff's claims or foreclose the filing of a motion for summary judgment.